UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Docket No. 20-CR-10012-IT |
| ) | |
| PAUL BATEMAN, ) | *Leave to file portions under seal granted* |
| ) | *on January 25, 2022* |
| Defendant ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

For the reasons discussed in greater detail below, the government respectfully requests that this Court DENY the defendant's Motion to Suppress Evidence [filed under seal and in redacted format on the public docket on December 27, 2021; hereinafter, "Mot."].

**I.    Relevant Background and Procedural Posture**

The defendant stands charged by indictment in the above-captioned docket with one count each of receipt and possession of child pornography, in violation of 18 U.S.C. § 2252A.  The investigation precipitating these charges began with the execution of a search warrant, issued by Magistrate Judge David H. Hennessy, at the defendant's home on December 12, 2019.  [Doc. 1, ¶ 4; *see* Mot. Ex. A, B, C].

The search warrant affidavit, having served as the starting point for the defendant's Motion to Compel Discovery, is familiar to this Court.  [Doc. 85].  It outlines, among other things, information about the Tor network; information about Website A, a child pornography hidden service that operated on the Tor network; information about a tip from the FLA regarding a U.S. IP address that had accessed Website A on a specific date in the past; information tying the defendant to that IP address; information about characteristics common to consumers of child

pornography; and information about the use and evidentiary value of computers in modern child pornography offenses. Mot. Ex. A.

The defendant was present at the home when agents executed the search warrant, waived his *Miranda* rights, and made several incriminating statements to agents, including that he had been visiting child pornography websites for 10-15 years and as recently as the week prior to the search and that he used the dark web to access and obtain child pornography. [Doc. 1., ¶¶ 5-6]. During the search, agents located child pornography on an encrypted hard drive. [*Id.*, ¶ 8]. The defendant was arrested and charged by complaint with the above-referenced offenses on that same date. [Doc. 1]. He was subsequently indicted for the same offenses on January 16, 2020, [Doc. 11], and arraigned on January 27, 2020, having previously been released on conditions. [Docs. 9, 17].

The government provided automatic discovery on or about February 24, 2020, [*see* Doc. 21, ¶ 1], which included, among other things, the search warrant and related materials. The case was scheduled for a Rule 11 hearing on February 11, 2021,[1] but, at the request of the defendant, the hearing was canceled. [Doc. 52]. The parties exchanged discovery letters in the months that followed, and the defendant filed a Motion to Compel Discovery on May 25, 2021. [Doc. 76]. The government opposed, [Doc. 81], and following a hearing, the Court denied the motion. [Doc. 85]. In reaching that result, the Court noted that "[a]ll of Bateman's requests are based entirely on speculation that the evidence may show wrongdoing by foreign and domestic law enforcement." *Id.* at 7.

---

[1] The defendant's review of the forensic evidence was significantly delayed because of the restraints on interpersonal interaction designed to mitigate the transmission of COVID-19. *See* Docs. 27, 34, 39.

The defendant filed the instant Motion to Suppress on December 27, 2021. [Doc. 106; hereinafter, "Mot."]. The motion incorporates eight exhibits, six of which were previously appended to the defendant's Motion to Compel (Ex. A, D, E, G, I, and J). The others present an additional communication from the FLA regarding Website A (Ex. F) and a declaration filed by a defense expert in a similar case pending in another district (Ex. H).

The defendant's motion essentially lays out two grounds for relief. First, the defendant asserts that the search warrant affidavit was not supported by probable cause because a) the tip was insufficient in that U.S. law enforcement did not establish the basis of knowledge for the tip from the FLA or make attempts to corroborate it, and b) the warrant was stale. Mot. at 5-11. Second, the defendant asserts that the affiant made material omissions and misstatements about the tip, the methods used by the FLA to identify the defendant's IP address, and the relationship between the FLA and U.S. law enforcement, which, individually or in combination, entitle the defendant to a *Franks* hearing. Mot. at 12-26. The defendant's motion should be denied because neither ground has merit.

II.     **The search warrant affidavit established probable cause.**

   **A.  Legal framework**

Probable cause for a search warrant exists "where information in the affidavit reveals a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Syphers*, 426 F.3d 461, 464 (1st Cir. 2005) (internal quotations omitted). Courts reviewing the sufficiency of an affidavit engage in a totality of the circumstances analysis, considering affidavits "in a common sense manner." *Syphers*, 426 F.3d at 465 (internal quotations omitted). "The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983) (internal quotations omitted). A reviewing court must "give significant deference to the magistrate

3

judge's initial evaluation" and may reverse only if there is no such substantial basis. *United States v. Cordero-Rosario*, 786 F.3d 64, 69 (1st Cir. 2015).

The ultimate question at the center of the totality of the circumstances analysis is whether the affidavit demonstrated a fair probability that evidence of a crime would be found pursuant to the warrant. *See Illinois v Gates*, 462 U.S. at 238. *Gates* does not define "fair probability;" "therefore, it appears that there is no threshold evidentiary standard which establishes fair probability that criminal evidence will be located in a particular area." *See* Peter J. Kocoras, 42 DePaul Law Review 1413, 1427 n.103 (1993). However, the First Circuit has made clear that "[t]he standard of probable cause requires a probability, not a prima facie showing, of criminal activity." *United States v. Burke*, 999 F.2d 596, 599 (1st Cir. 1993) (*citing United States v. Ciampa*, 793 F.2d 19, 22 (1st Cir. 1986)). *See also United States v. Mitro*, 880 F.2d 1480, 1485 n.7 (1st Cir. 1989).

Probable cause is a "practical, nontechnical conception," *Gates*, 462 U.S. at 231 (citing *Brinegar v. United States*, 338 U.S. 160, 176 (1949)), and as such, "hypertechnical readings should be avoided." *Syphers* at 465 (citing *United States v. Baldyga*, 233 F.3d 674 at 683 (1st Cir. 2000). Inferences are permissible, *United States v. Falon*, 959 F.2d 1143, 1147 (1st Cir. 1992) (citing *United States v. Hershenow*, 680 F.2d 847, 852 (1st Cir. 1982)), but wholly conclusory statements in an affidavit are insufficient, *see Gates,* 462 U.S. at 239. In sum, the totality of the circumstances analysis is quite flexible and permits the issuing magistrate to make a common-sense judgment.

To establish probable cause, the facts presented in the affidavit "need only warrant a man of reasonable caution to believe that the evidence of a crime will be found." *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999) (internal quotation omitted). The fact that this is a reasonable person standard highlights that "[t]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which

4

reasonable and prudent men, not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (citing *Gates*, 462 U.S. at 231). Again, the probable cause need not be sufficient to prove guilt in a criminal trial. *See Brinegar v. United States*, 338 U.S. 160, 173 (1949).

**B. The FLA tip was sufficient to establish probable cause.**

The defendant first argues that the tip from the FLA was insufficient to establish probable cause, because the affiant failed to establish the FLA's basis of knowledge and made no effort to corroborate the tip. Mot. at 6-9. The thrust of this argument, however, is flawed; it presumes that the FLA's tip should be assessed in the same light as a tip from a confidential informant. *See*, *e.g.*, *United States v. Gifford*, 727 F.3d 92 (1st Cir. 2013) (citing *United States v. Tiem Trinh*, 665 F.3d 1 (1st Cir. 2011)). In advancing this argument, the defendant overlooks the general principle that information in search warrant affidavits from reliable informants, like law enforcement agencies, is entitled to considerable credence.

The affiant's (and Magistrate Judge Hennessy's) reliance on hearsay was permissible in these circumstances. The FLA is a law enforcement agency that is well-known by, and has a long history of sharing information with, the United States. Mot. Ex. A, ¶¶ 22-26. "There is no objection to hearsay, if the informant is shown to be reliable and there is a disclosed, reliable, basis for his information." *United States v. Asselin*, 775 F.2d 445, 446 (1st Cir. 1985) (citing *Aguilar v. Texas*, 378 U.S. 108, 114 (1964), *Jones v. United States*, 362 U.S. 257, 269 (1960)). Courts routinely find that tips provided by one law enforcement agency to another are reliable. *United States v. O'Connell*, 19-cr-00017-GZS, 2019 WL 2396560, at *5 n. 7 (D. Me. June 6, 2019) (citing *United States v. Benoit,* 730 F.3d 280, 285 (3d Cir. 2013) (holding that Coast Guard officers reasonably relied on tip from foreign law enforcement agency where that agency was known to officers and repeat player in drug trafficking prevention); *United States v. Winters*, 491 F.3d 918, 922 (8th Cir. 2007) (concluding that "significantly corroborated" tip from law enforcement officer

5

to state narcotics agents was sufficiently reliable and including it in reasonable suspicion calculus); *United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006) (incorporating tip from one DEA office to another in group of "factors to be aggregated" in making reasonable suspicion determination); *United States v. Troka*, 987 F.2d 472, 474 (7th Cir. 1993) (finding reasonable suspicion based in part on tip from sister police department since that "police department was a reliable source and because later information provided further corroboration for the tip")). The facts of this case do not, contrary to the defendant's assertion, "mirror" those in *Gifford*, where law enforcement relied on a tip from a civilian confidential informant. Given the FLA's history of providing reliable tips to U.S. law enforcement—as a respected law enforcement agency itself—Magistrate Judge Hennessy reasonably relied on the FLA tip described in the affidavit without the need to establish the basis of knowledge for the tip or to attain further corroboration by HSI to demonstrate that the information was reliable and trustworthy.[2] The motion must therefore be denied on this basis.

### C. The warrant was not stale.

The defendant next argues that the warrant was stale. This argument, too, ignores a body of well-established caselaw that directly undercuts his position. The defendant does acknowledge that in child pornography cases, the passage of time between the observed interaction with child pornography and issuance of the warrant does not necessarily render a warrant stale, assuming the magistrate was provided with information tending to show that the target is likely to have retained

---

[2] At least one other court has considered and rejected this line of argument on similar facts. *See United States v. Sanders,* 20-cr-00143-TSE (E.D.V.A.) (given the FLA's history of providing reliable tips to the FBI and the FLA's status as a respected foreign law enforcement agency, it was reasonable for the Magistrate Judge to rely on the FLA tip without further corroboration by the FBI). *Id.,* Doc. 122 at 8-9, citing *United States v. Bynum,* 293 F.3d 192, 197 (4th Cir. 2002), *United States v. Hodge,* 354 F.3d 305, n.1 (4th Cir. 2004), and *United States v. Benoit,* 730 F.3d 280, 285 (3d Cir. 2013).

the illicit materials. Mot. at 10, citing *United States v. Morales-Aldahondo*, 524 F.3d 115 (1st Cir. 2008). However, the defendant claims that the affidavit here fails to support any such inferences, noting especially a lack of reference to this defendant in particular or to what exactly was accessed on Website A and how it was accessed. Mot. at 10-11.

This argument might be successful if it was based on a complete assessment of the facts here. But it is not. The affidavit includes dozens of paragraphs that establish that  Mot. Ex. A. All of this information, *taken together*, demonstrates probable cause to believe that there was a fair probability that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252A would be located at the defendant's residence.

Furthermore, the defendant's reliance on *United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015), is misplaced, given the distinctions between the facts there and the facts here. In *Raymonda*, the defendant opened, without clicking on any links, one to three pages of an open-web site that housed thumbnails of child pornography images. In that case, the defendant's behavior was consistent with "an innocent user inadvertently stumbling upon a child pornography website." *Id.* at 117. In fact, a law enforcement officer coincidentally encountered the same site link when he was navigating another website. Conversely, the affidavit in this case establishes that the

7

defendant (then known only as a "user of the internet" at his residence, before his confession that he had been downloading child pornography for more than a decade) did not merely "stumble" upon Website A; to the contrary, ████████████████████████████ ██████ show that his presence on the Website was purposeful and motivated by the desire to access the Website's illegal content. *See* Mot. Ex. A, ¶¶ 5-13; *accord United States v. Tagg*, 886 F.3d 579, 590 (6th Cir. 2018) (recognizing *Raymonda* court's acknowledgment that the fact of membership to a child pornography website provides probable cause to search residence); *United States v. Bosyk*, 933 F.3d 319, 330-331 (4th Cir. 2019) (same). This distinction is crucial, where, in an assessment of whether there was sufficient probable cause for a warrant to issue, the affidavit need only set forth facts to show a fair probability that evidence, fruits, or instrumentalities of the target offenses would be found at the target residence. Here, the affidavit does just that, and the motion must be denied on these grounds.[3]

### D. Even if the warrant lacked probable cause, which it does not, the agents relied on it in objective good faith.

Even if this Court finds that the Magistrate Judge erred in issuing the search warrant, on any or all of the bases described above, the defendant's motion to suppress must be denied because the officers executing the warrant acted in objectively reasonable reliance on it. Supreme Court precedent dictates that suppression is a remedy of last resort, to be used for the sole purpose of deterring future Fourth Amendment violations, and only in circumstances when the deterrence benefits of suppression outweigh its heavy costs. *Davis v. United States*, 564 U.S. 229, 237 (2011); *Herring v. United States*, 555 U.S. 135, 140-41 (2009). "The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that

---

[3] The district court in *Sanders* rejected an identical argument based on the same reasoning. 20-cr-00143-TSE, Doc. 122 at 9-11.

the exclusionary rule applies." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 223 (1983)). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144.

These principles are reflected in the good-faith exception to the exclusionary rule articulated in *Leon*: when police act in "objectively reasonable reliance on a subsequently invalidated search warrant" obtained from a neutral and detached magistrate, "the marginal or nonexistent benefits produced by suppressing evidence . . . cannot justify the substantial costs of exclusion." *United States v. Leon*, 468 U.S. 897, 922 (1984). The good-faith exception thus recognizes that, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . there is no police illegality and thus nothing to deter." *Id.* at 920-21.

The good-faith exception cannot apply in certain clearly-delineated situations: where the issuing judge was misled by information in the affidavit; where the issuing judge wholly abandoned his judicial role; where the warrant affidavit is so lacking in probable cause "as to render belief in its existence entirely unreasonable;" and where the warrant fails to identify with particularity the place to be searched or things to be seized so that agents could not reasonably presume it to be valid. *United States v. Levin*, 874 F.3d 316, 322 (1st Cir. 2017) (citing *Leon* at 923 and *United States v. Woodbury*, 511 F.3d 93, 99 (1st Cir. 2007)).

Here, none of these four exclusions to the good-faith exception apply. For the reasons outlined above, the warrant did *not* lack probable cause, and as discussed in more detail below, Agent Squire did *not* mislead the magistrate judge. Furthermore, there is nothing in the record to suggest that the Magistrate Judge "wholly abandoned" his role in issuing the warrant, as the warrant was exceedingly particular in identifying the place to be searched and the things to be

9

seized. Accordingly, law enforcement was objectively reasonable in relying on the warrant in good faith and, even if, *arguendo*, the warrant was deficient, the defendant's Motion should be denied.

**III.     There were no material omissions or misrepresentations, and the defendant is not entitled to a *Franks* hearing.**

    **A. Legal framework**

Affidavits executed in support of a search warrant enjoy a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). A defendant may be entitled to a hearing to contest the factual validity of an affidavit only if he makes a "substantial preliminary showing" on two issues. *Franks*, 438 U.S. at 170. First, the defendant must make a showing of "deliberate falsehood or of reckless disregard for the truth" regarding specific portions of the warrant affidavit; "negligence or innocent mistake" will not suffice. *Id.* at 171. If the defendant alleges that the officer was reckless, the defendant must show that "the affiant in fact entertained serious doubts as to the truth of the allegations." *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002) (internal quotations omitted).

Second, even if the defendant makes this showing, he is not entitled to a *Franks* hearing if, "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Id.* at 171-72. In other words, the defendant must show that the allegedly false statement was "necessary to the finding of probable cause." *United States v. Reiner*, 500 F.3d 10, 14 (1st Cir. 2007) (quoting *Franks*, 438 U.S. at 155-56).

If these two requirements are met, the defendant may then try to establish by a preponderance of the evidence that the search warrant affiant in fact committed perjury, and that the non-perjurious content of the search warrant affidavit would have been insufficient on its own to establish probable cause, thereby requiring that the search warrant be voided and its fruits

10

suppressed. *Franks*, 438 U.S. at 156. "A defendant's failure to make a showing on either of these two elements dooms his challenge." *United States v. Owens*, 917 F.3d 26, 38 (1st Cir. 2019) (internal quotations omitted).

In announcing this rule, the Supreme Court emphasized that it "has a limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." *Id.* at 167. The First Circuit has aptly characterized these requirements as "clear" and "exacting standards" that a defendant must satisfy to obtain a *Franks* hearing. *United States v. Higgins*, 995 F.2d 1, 3 & n.3 (1st Cir. 1993). Because these standards are so high, the First Circuit, more than 20 years after the *Franks* decision, specifically cited *Franks* and its requirement for a substantial preliminary showing when observing that "evidentiary hearings on motions in criminal cases are the exception, not the rule." *United States v. Alicea*, 205 F.3d 480, 487 (1st Cir. 2000).

The *Franks* framework has been extended to the omission of material information from search warrant affidavits. "In the case of an omission, 'suppression should be ordered only if the warrant application, . . . clarified by disclosure of previously withheld material, no longer demonstrates probable cause.'" *United States v. Reiner*, 500 F.3d 10, 14 (1st Cir. 2007) (quoting *United States v. Stewart*, 337 F.3d 103, 105 (1st Cir. 2003)) (alteration in original). Thus, "the inquiry is whether [the omission's] inclusion in an affidavit would have led to a negative finding by the magistrate on probable cause." *United States v. Castillo*, 287 F.3d 21, 25 n.4 (1st Cir. 2002). The omission still must be intentional or reckless: "even if the facts omitted from the warrant application were material, either individually or in the aggregate, that determination alone does not suffice to show that a *Franks* violation occurred. 'Franks protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate.'" *United States v. Belton*, 414 F. Supp. 2d 101, 111 (D.N.H. 2006) (quoting *United*

*States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)) (collecting cases), aff'd, 520 F.3d 80 (1st Cir. 2008).

### B. There were no intentional or reckless material misrepresentations or omissions.

Here, the defendant asserts three claims in support of his motion for a *Franks* hearing: 1) Agent Squire misrepresented the nature, origin, and reliability of the FLA's tip; 2) Agent Squire made material omissions regarding the method used by the FLA to identify the defendant's IP address; and 3) Agent Squire misrepresented the nature of the relationship between the U.S. and the FLA.

Even assuming that there *were* any such misrepresentation or omissions, the defendant has not made (and cannot make) the requisite substantial preliminary showing required for a hearing (much less prove that a *Franks* violation occurred) because he has failed to establish the intentionality and materiality of the alleged misstatements and omissions. For the most part, the defendant has already proffered these allegations, although in his Motion to Compel, he presented them as hypotheticals: the FLA "may have" misrepresented its lack of interference with a computer in the United States, Agent Squire "may have" misrepresented the working relationship between the United States and the FLA, and a NIT "may have" been used in a joint venture to obtain the defendant's IP address. [Doc. 76]. In denying the Motion to Compel, the Court agreed with the government's assessment that the defendant's discovery requests were based on an argument comprised of "a stack of hypotheticals." [Doc. 85 at 7]. For the reasons that follow, the motion for a *Franks* hearing must be denied.

#### 1. There were no intentional or reckless material misrepresentations or omissions regarding the nature, origin, or reliability of the FLA tip.

The defendant's attempt to characterize Paragraph 23 of the affidavit as containing a material misstatement of the FLA tip is confounding. *See* Mot. at 12-13. The affidavit reads:

12



Mot. Ex. A, ¶ 23.

The FLA tip reads:



Mot. Ex. D.

Additional communication from the FLA, which used the same description of the site as included in the FLA tip, identified the site by name. Mot. Ex. F. Agent Squire did not "manipulat[e] the language of the tip," Mot. at 13; he essentially reported it verbatim. The defendant's complaint that the FLA tip itself was drafted less artfully than Paragraph 23 only underscores that Agent Squire clarified the tip (based on common sense and experience) rather than manipulated it to intentionally or recklessly mislead the Magistrate Judge.[4] Paragraph 23 accurately and clearly conveys the FLA tip; the defendant's argument on this point fails.

So, too, does his argument that Agent Squire "omitted" ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ l allegedly in an attempt to mislead the Magistrate Judge into believing that the defendant had done anything more than visit Website A. *See* Mot. at 15. But this argument fails on two fronts: first, Agent Squire accurately relayed what

---

[4] This is another argument that was considered and rejected by the court in *Sanders* regarding a similar tip. *Id.* at 12 & n. 9.

was transmitted in the tip (see Paragraph 23) and what was accessible on Website A's ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *see* Mot. Ex. A, ¶¶ 14-21); and second, Agent Squire laid out in detail what steps and considerations were involved in even navigating to the homepage in the first instance (*see* Mot. Ex. A, ¶¶ 5-13, 35, 39). It defies reason that Agent Squire would go to such lengths throughout the affidavit—as recognized by the defendant—to *not* overstate his understanding of the extent of the documented activity by a person using the defendant's IP address, only to then either intentionally or recklessly misrepresent other information relayed in the FLA tip. *See* Mot. at 14-15, citing Ex. A ¶¶ 24, 27, 39. The information relayed in the tip and recounted verbatim by Agent Squire in the affidavit invites and warrants the reasonable inference that the user was purposeful in his efforts to reach Website A and its illegal content, based on the specific steps necessary ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *See, e.g., Raymonda* at 115 (inference that defendant is consumer of child pornography flows "from circumstances suggesting that he had accessed those images willfully and deliberately, actively seeking them out to satisfy a preexisting predilection").[5] Nothing the defendant would have Agent Squire add changes that analysis. The defendant's motion on this point fails.[6]

Moreover, the defendant's attempt to reinvigorate his failed claims that the FLA (or Agent Squire) must have lied about how the defendant's IP address was identified is also meritless. [*See* Doc. 76 at 21-23; Doc. 85 at 6-7]. Whether or not there were other FLAs involved in any portion of any investigation into Website A at any time is irrelevant to whether the affidavit in this case

---

[5] *United States v. Falso*, 544 F.3d 110 (2d Cir. 2008), is inapposite. In that case, the defendant was not alleged to have actually accessed or subscribed to any child pornography website. *Id.* at 120.

[6] The court in *Sanders* likewise examined and rejected this argument. *Id.*, Doc. 122 at 12-13.

established probable cause. The defendant presents nothing beyond speculation to assert that information about other entities who were not involved in or implicated by the FLA tip affects, let alone is necessary or fatal to, a finding of probable cause. The defendant assumes, without basis, that "there was a second FLA involved in obtaining the IP address information" related to the defendant. Mot. at 18. This rank speculation ignores the facts that are laid out in the affidavit and corroborated by discovery provided to the defendant: the FLA obtained the information through independent investigation that was lawfully authorized in its country pursuant to its national laws, in a manner that did not require it to interfere with, access, search, or seize any data from any computer in the United States. Mot. Ex. A at ¶ 25; Mot. Ex. E. Such speculation is insufficient to make the substantial preliminary showing necessary to trigger a *Franks* hearing. *Franks* at 170.

    **2. There were no intentional or reckless material misrepresentations or omissions regarding the method(s) by which the FLA identified the defendant's IP address.**

The defendant's reliance on an expert declaration provided to the *Sanders* court in connection with similar litigation advances his position no further than the defendant's in that case; that is, it has no bearing on the veracity or accuracy of the information relayed to the Magistrate Judge in the affidavit. Mot. Ex. H.; *Sanders*, Doc. 122 at 13-14. As the court in *Sanders* observed, the declaration does not contain any assertion that the FLA could not have obtained the defendant's IP address without interfering with a computer in the United States. *Id*., Doc. 122 at 14.[7] On the contrary, the declaration specifically limits its scope to "how the Tor network operated and how activity on the Tor network could be traced as of May 23, 2019." Mot. Ex. H, ¶ 6. Furthermore,

---

[7] Exhibit H was filed after Doc. 122 was issued, in connection with subsequent briefing of related issues; the *Sanders* court denied the renewed Motion to Suppress Based on Warrantless Use of a Network Investigative Technique and False Material Information in Affidavit Paragraph 25, which it treated as a Motion for Reconsideration, finding that nothing in the more recent filings changed the *Franks* analysis. *Id.*, Doc. 501.

it posits that "law enforcement *likely* had control over the Onion Service when the visit was recorded," Mot. Ex. H at 7 (emphasis added). The defendant—again—presents nothing beyond speculation to support his contention that Agent Squire should have disbelieved the FLA's statement that it did not interfere with a computer in the United States and otherwise included information regarding the method used to obtain the IP address, if it was known to him. The defendant has failed to make a substantial preliminary showing that Agent Squire made a material omission, and thus, his motion on this point must also be denied.

### 3. There were no intentional or reckless material misrepresentations or omissions regarding the relationship between the U.S. and the FLA.

The defendant reiterates here one of the principal arguments underlying his Motion to Compel: that because the FLA and the United States have a collaborative relationship at various levels, the FLA or Agent Squire (or both) must have lied when they indicated that the FLA worked independently from U.S. law enforcement in identifying the defendant's IP address as having accessed Website A. He even cites some of the same materials (Mot. at 22-25 and n. 7, 10, 15; Ex. I, J) in support. This "stack of hypotheticals" is no more persuasive now than it was then. [*See* Doc. 85]. The defendant's contention that other cases have apparently been generated by similar FLA tips demonstrates that the tips are "more than just an informal, one-off relaying of information" neither accurately portrays any representation that Agent Squire (or the government) has made in this case nor offers any concrete reason to disbelieve the FLA's assertion that it acted independently in the identification of the defendant's IP address as having accessed Website A. This is plainly not enough to find that there was any omission, let alone a material one, that should trigger further inquiry under *Franks*. *See United States v. Valdivia*, 680 F.3d 33, 52 (1st Cir. 2012) (citing *United States v. LaChapelle,* 869 F.2d 488, 490–91 (9th Cir.1989) for proposition that joint venture exception did not apply where the foreign official who conducted the foreign investigation

"stated explicitly ... that American agents were not involved in initiating or controlling the contested [foreign] wiretap").

## IV.  Conclusion

In sum, the defendant's motion fails in all respects.  Based on the totality of the circumstances, the search warrant affidavit was supported by probable cause; the FLA tip was sufficient without further information or attempts by Agent Squire to establish the basis of knowledge for the tip or to corroborate it, and the warrant was not stale.  Even if the warrant was susceptible to challenge on any of these fronts, the *Leon* good-faith exception would apply.  Moreover, the defendant has failed to make a substantial preliminary showing pursuant to *Franks* that the affiant made intentional or reckless material omissions or misstatements about the tip, the methods used by the FLA to identify the defendant's IP address, or the relationship between the FLA and U.S. law enforcement.  Accordingly, his motion should be denied.

                                                        Respectfully Submitted,

                                                        RACHAEL S. ROLLINS
                                                        United States Attorney

Date: January 24, 2022            By:    /s/ Anne Paruti_____
                                                        Anne Paruti
                                                        Assistant United States Attorney
                                                        United States Attorney's Office
                                                        One Courthouse Way
                                                        Boston, MA 02210
                                                        617-748-3100

## **CERTIFICATE OF SERVICE**

I, Anne Paruti, hereby certify that the foregoing was filed through the Electronic Court filing system (with portions under seal, having sought leave to do so on January 24, 2022) and will be sent electronically to the registered participants as identified on the Notice of Electronic filing in redacted format. It was emailed to counsel of record in unredacted format on January 24, 2022.

Date: January 24, 2022                                           /s/ Anne Paruti
                                                                                     Anne Paruti
                                                                                     Assistant United States Attorney