UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES | * |
| | * |
| v. | *  Criminal Action No. 1:20-cr-10012-IT |
| | * |
| PAUL BATEMAN, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

March 31, 2022

TALWANI, D.J.

Pending before the court is Defendant Paul Bateman's Motion to Suppress Evidence [Doc. No. 106]. For the following reasons, the motion is DENIED.

I. Background

On December 11, 2019, Homeland Security Investigations ("HSI") Special Agent Squire presented an affidavit in support of an application for a warrant to search Bateman's home for evidence of child pornography. Squire Aff. ¶¶ 2, 4 [Doc. No. 106-1]. The affidavit went into detail regarding the operation of the Tor network; Website A, a child pornography site that operated on Tor as a hidden service; a tip from a foreign law enforcement agency ("FLA" or "foreign agency") regarding a U.S. IP address that had been used to access Website A on April 20, 2019; and information tying Bateman to that IP address.[1]

Based on Squire's affidavit, HSI obtained a search warrant for Bateman's home, which was executed on December 12, 2019. Squire Aff. in Support of Complaint ¶ 4 [Doc. No. 1-1]. According to law enforcement, Bateman was present, waived his Miranda rights, and made

---

[1] This background was previously discussed in the court's Memorandum and Order [Doc. No. 85] denying Bateman's Motion to Compel Discovery [Doc. No. 76].

several incriminating statements. Id. at ¶¶ 5-6. During the search, Bateman directed law enforcement agents to an encrypted hard drive with an encrypted container, in which Bateman stored child pornography. Id. at ¶ 7. Bateman told the agents how to decrypt the hard drive and the container, in which agents located a considerable amount of child pornography. Id. at ¶¶ 7-9. Bateman was arrested and subsequently indicted on one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). Indictment [Doc. No. 11].

The government provided Bateman with its automatic discovery production, including, among other things, the search warrant and Squire's supporting affidavit. See Status Report [Doc. No. 21]. Bateman and the government exchanged discovery letters in the months that followed, and Bateman filed a Motion to Compel Discovery [Doc. No. 76] on May 25, 2021, which the court denied. See Mem. & Order [Doc. No. 85].

Through another case in this district, Bateman learned that Website A's operation ceased in June 2019, when its server was seized by a foreign agency. See Mot. to Suppress 2 & n.3 [Doc. No. 106]. On December 20, 2021, in response to a specific inquiry, the government confirmed that the foreign agency that seized the server that hosted Website A was not the tip-providing foreign agency referenced in Squire's affidavit. Id. at 5. The government also disclosed that the two FLAs were from different countries, with the Website A server being seized by the FLA in the country where Website A was hosted. Id. The government declined to identify that foreign agency or the server host country. Id.

Bateman filed the pending Motion to Suppress Evidence [Doc. No. 106] on December 27, 2021.

**II.    Discussion**

Bateman argues that the evidence seized from his home must be suppressed because the search warrant was not supported by probable cause where the tip from the FLA was insufficient, and the warrant was stale. Bateman also asserts that Squire made material omissions and misstatements about the tip, the methods used by the foreign agency to identify Bateman's IP address, and the relationship between the foreign agency and U.S. law enforcement, which, individually or in combination, entitle Bateman to a Franks hearing. The court addresses each argument in turn.

   A.    *Probable Cause*

The Fourth Amendment to the United States Constitution provides that no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. U.S. Const. amend. IV. "'A warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place searched—the so-called 'nexus' element.'" United States v. Dixon, 787 F.3d 55, 59 (1st Cir. 2015) (quoting United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999)).

The probable cause inquiry is a "'practical, common-sense' one that takes into account the 'totality of the circumstances.'" Id. (quoting Feliz, 182 F.3d at 86 and United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997)). In making the probable cause determination, the "issuing magistrate ordinarily considers only the facts set forth in supporting affidavits accompanying the warrant application." United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996). However, the probable cause showing "leaves ample room for reasonable inferences based on common experience: an affidavit submitted to show probable cause need not point to

some straight-line connection but, rather, may rely on the affiant's connecting of a series of dots in a commonsense way." United States v. Adams, 971 F.3d 22, 32 (1st Cir. 2020) (citing Florida v. Harris, 568 U.S. 237, 244 (2013)); see also id. (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)) ("A showing of probable cause may be premised on either direct or circumstantial evidence or some combination of the two").

A reviewing court must examine the affidavit in support of the warrant in a "practical, commonsense fashion" and give "considerable deference" to the magistrate's finding that the information contained therein satisfied the probable cause showing. Feliz, 182 F.3d at 86 (noting the focus is on "whether the magistrate had a substantial basis for concluding probable cause existed"). Reversal is appropriate only where a reviewing court sees "no substantial basis for concluding that probable cause existed." Dixon, 787 F.3d at 58-59. "[D]oubtful or marginal cases should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109 (1965).

To satisfy the nexus element a court need only find "fair probability—not certainty—that evidence of a crime will be found in a particular location based on the totality of circumstances." United States v. Lindsey, 3 F.4th 32, 39 (1st Cir. 2021). "The nexus between an alleged crime and the place searched may be 'inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where criminals would hide [evidence of a crime].'" Id. (quoting United States v. Rodrigue, 560 F.3d 29, 33 (1st Cir. 2009) (alteration in Rodrigue)). The nexus element may be satisfied even without direct evidence. United States v. Gonzales-Arias, 946 F.3d 17, 24 (1st Cir. 2019) (concluding that probable cause may be found even if officers never spotted illicit objects at the scene).

1. Basis of Knowledge for the Tip

Regarding the reliability of the tip, Bateman argues that only one paragraph of Squire's affidavit in support of the search warrant alleges criminal activity. Specifically, Squire affirms:

> In the course of this investigation, a foreign law enforcement agency (hereinafter, "FLA") known to U.S. law enforcement and with a history of providing reliable, accurate information in the past, notified U.S. law enforcement that FLA had determined that on April 30, 2019 at 10:38:18 UTC, IP address 73.142.30.140 was used to access online child sexual abuse and exploitation material via a website.

Squire Aff. ¶ 23 [Doc. No. 106-1]. This, Bateman claims, could not establish a "fair probability" that evidence of a crime would be found in his home, where "[t]he affidavit failed to include any information as to how the FLA came across that information, how reliable the method the FLA used to obtain the information was, and whether the IP address was obtained through first-hand knowledge or through other sources." Mot. to Suppress 6 [Doc. No. 106]. Bateman argues that without more information and without corroboration, Squire "could not possibly have assessed the probable significance of the tip" and that the Magistrate Judge's issuance of the warrant was therefore in error. Id.

Where law enforcement acts "on information from a confidential informant, 'law enforcement must provide some information from which a court can credit the informant's credibility.'" United States v. Gonsalves, 859 F.3d 95, 103-04 (1st Cir. 2017) (quoting United States v. White, 804 F.3d 132, 136 (1st Cir. 2015)). In making this reliability assessment, the court relies on a "non-exhaustive" list of factors, including:

> (1) the probable veracity and basis of knowledge of the informant;
>
> (2) whether an informant's statements reflect first-hand knowledge;
>
> (3) whether some or all the informant's factual statements were corroborated wherever reasonable and practicable; and

>   (4) whether a law enforcement officer assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's information.

White, 804 F.3d at 137 (citing United States v. Ramírez-Rivera, 800 F.3d 1, 27 (1st Cir. 2015)). Here, Squire's affidavit states that the tip came from "a foreign law enforcement agency" that was "known to U.S. law enforcement" and had "a history of providing reliable, accurate information in the past." Squire Aff. ¶ 23 [Doc. No. 106-1]. It then goes on to provide information regarding the reliability of the FLA's past tips. Id. at ¶ 26. Given these facts, the Magistrate Judge reasonably relied on the foreign agency's tip in concluding that probable cause existed to issue the search warrant because (1) "a tip from one federal law enforcement agency to another implies a degree of expertise and a shared purpose in stopping illegal activity," United States v. Benoit, 730 F.3d 280, 285 (3d Cir. 2013) (quoting United States v. Mathurin, 561 F.3d 170, 176 (3d Cir. 2009)); (2) the "working relationship" between the United States and the FLA "bolsters the credibility of the information" since the FLA's "reputation can be assessed," and it "can be held responsible if its allegations turn out to be fabricated," id. (quoting Florida v. J.L., 529 U.S. 266, 270 (2000)); and (3) "the source here was not only known to [federal law enforcement], but was also a repeat-player in the United States' efforts" at combatting child exploitation, id. See also United States v. O'Connell, 2019 WL 2396560, at *5 n.7 (D. Me. June 6, 2019) (collecting cases for proposition that "[c]ourts routinely find that tips provided by one law enforcement officer or agency to another are reliable").

    2.    Staleness

Bateman also argues that the warrant was stale because there was a seven-month lapse between when Bateman was alleged to have accessed Website A in April 2019 and when the FBI executed the search warrant of his home in December 2019. "Information contained in an affidavit is stale if it established probable cause at some point in the past but does not support

6

probable cause at the time of the warrant's issuance." United States v. McLellan, 792 F.3d 200, 210 (1st Cir. 2015). Evaluating a claim of staleness is not simply a matter of "counting the number of days that have elapsed" but rather of assessing "the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information." Id. (quoting United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008)).

As to child pornography, "courts have held time and time again that child pornography traders and collectors maintain their collections for long periods of time, and often store it in safe, close, and easily accessible locations." McLellan, 792 F.3d at 209 n.5. Although Bateman acknowledges this, he nevertheless argues that a finding of staleness is warranted here because Squire's affidavit provided no allegations specific to Bateman regarding any propensity or habit of keeping a collection of child pornography. The affidavit, however, contains detailed allegations regarding the steps that an individual would necessarily undertake to access Website A and the type of particularly violent content hosted on Website A, see Squire Aff. ¶ 15 [Doc. No. 106-1], suggesting that someone who visited the site was not innocently surfing the internet. And even though the affidavit does not state exactly what Bateman allegedly accessed on the website, it is reasonable to assume that an individual who visits such a site would be likely to download and possess child pornography. Thus, the Magistrate Judge made no error in considering Bateman's visit to Website A when making the probable cause determination.

B. *Request for Franks Hearing*

Bateman next requests a Franks hearing on the ground that Squire made material omissions and misstatements in his affidavit supporting the search warrant. A defendant requesting a Franks hearing "must make a 'substantial preliminary showing' that the affidavit

7

included a false statement which was made either knowingly and intentionally or with reckless disregard for the truth, and that this misstatement was necessary to the finding of probable cause." United States v. Nelson-Rodriguez, 319 F.3d 12, 34 (1st Cir. 2003) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)); United States v. Adams, 305 F.3d 30, 36 n.1 (1st Cir. 2002)). "A material omission in the affidavit may also qualify for a Franks hearing in place of a false direct statement, provided the same requisite showing is made." Id. (citing United States v. Scalia, 993 F.2d 984, 987 (1st Cir. 1993)); see also United States v. Fuccillo, 808 F.2d 173, 178 (1st Cir. 1987). The First Circuit has stated that "[b]oth Franks and our own related precedent suggest that any suppression should be ordered only if the warrant application, cleansed of any false information or clarified by disclosure of previously withheld material, no longer demonstrates probable cause." United States v. Stewart, 337 F.3d 103, 105 (1st Cir. 2003) (citing Franks, 438 U.S. at 156).

      Here, Bateman claims that Squire made three material misstatements or omissions that, taken individually or in combination, entitle him to a Franks hearing. First, Bateman claims that Squire materially misstated the nature, origin, and reliability of the tip from the FLA. Specifically, he claims that while the tip stated that Bateman's IP address was used to "access" Website A, Squire represented that the IP address "was used to access online child sexual abuse and exploitation material *via a website*." Squire Aff. ¶ 23 [Doc. No. 106-1] (emphasis added). This change, Bateman argues, created the impression that the FLA and U.S. law enforcement had information that the IP address was used to visit Website A and *then* to access child pornography, even though the tip contains no such information. Bateman also claims that the affidavit "omitted the crucial fact that the homepage of Website A did not contain any child sexual abuse material" and that "[c]ontrary to the impression created by Agent Squire," the tip

did not contain any information that the user associated with the IP address had navigated beyond Website A's homepage. But even if this were an omission, it would not be a material one. As discussed above, the effort required to access Website A suggests that an individual visiting the site—even if just the homepage—was actively and willfully seeking out its content.

Bateman also claims that Squire omitted from the affidavit the fact that there was not just one FLA involved in the investigation of Website A, but two, from different countries. This, Bateman argues, undermines the reliability of the tip, because the affidavit does not address or establish the reliability or trustworthiness of the FLA that seized the server. Bateman has not explained the relevance of this supposed omission where the second FLA seized the Website A server in June 2019, two months *after* Bateman is alleged to have accessed the site.

Bateman similarly argues that Squire's omission regarding the second FLA undercuts the truth of his statement that the first FLA had not "interfered with, accessed, searched, or seized any data from any computer in the United States" id. at ¶ 25, by creating the impression that no law enforcement agency anywhere had interfered with a computer in the United States. In support of this proposition, Bateman offers an expert declaration, submitted in a similar case that arose out of the same tip, which suggests that the IP address could not have been identified without running a "network investigative technique" ("NIT") or, alternatively, an unreliable "traffic analysis" technique. See Murdoch Decl. at ¶¶ 22-32 [Doc. No. 106-9]. But as the court previously concluded in denying Bateman's Motion to Compel Discovery [Doc. No. 76], these arguments are purely speculative. The affidavit states that the tip-providing FLA obtained Bateman's IP address without interfering with a computer in the United States. Even if a second FLA were involved, Bateman has presented nothing to suggest that Squire misrepresented the tip-providing FLA's lack of interference with a computer in the United States.

9

Finally, Bateman argues that Squire misrepresented the relationship between U.S. law enforcement and the foreign agency by minimizing the collaborative relationship between the agencies to avoid the requirements of the Fourth Amendment. This rehashes Bateman's argument in support of his Motion to Compel Discovery [Doc. No. 76], and the court rejects it for the same reasons. Even if the FLA has passed on multiple tips to United States law enforcement, Bateman has not made a "substantial preliminary showing" that the FLA was working with the United States in a joint venture, contrary to Squire's assertions.

### III.   Conclusion

For the forgoing reasons, Bateman's Motion to Suppress Evidence [Doc. No. 106] is DENIED.

IT IS SO ORDERED.

March 31, 2022                                        /s/ Indira Talwani
                                                     United States District Judge