UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Docket No. 20-CR-10012-IT |
| | ) | |
| PAUL BATEMAN, | ) | |
| | ) | |
| Defendant | ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Paul Bateman pled guilty to the above-docketed indictment, which charges him with one count each of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). For the reasons outlined below and to be articulated at the sentencing hearing, the government respectfully requests that this Court impose a sentence that includes 84 months in prison and a term of five years of supervised release.

## FACTS

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 9 through 15 of the Presentence Investigation Report ("PSR").

## DISCUSSION

**I.  Sentencing Guideline Calculation, Restitution, and Other Statutory Provisions**

Sentencing and Supervision

Based on its computation of the defendant's total offense level as 30 and his criminal history category as I, the United States Probation Office ("Probation") has computed a Guideline sentence in this case to include a term of incarceration from 97 months to 121 months; the Guideline range of supervised release is five years to life.

The government agrees with Probation's calculation of the defendant's Offense Level and Criminal History Category, and thus agrees with its determination of his Guideline sentencing range (GSR) as outlined above. As outlined below, however, the government believes that a practical application of the Guidelines may differ in some respects from this technically correct calculation of the GSR.

The government also agrees with Probation's treatment of the defendant's objections to special conditions of release 6, 7, and 10.

Restitution

The parties jointly request that the Court schedule a date subsequent to the sentencing hearing by which the parties must submit memoranda, either jointly or separately, advocating for an appropriate award for each victim who has demonstrated the right to restitution. The government has submitted restitution requests to the defendant on behalf of 50 victims from the 495 identified child pornography series implicated in this case, and anticipates that the parties may be able to come to an agreement regarding appropriate awards for those victims. The government has provided those requests on a rolling basis to the defense as they have been received from individual victims, and the defense has worked diligently to communicate directly with victim counsel to negotiate agreed-upon amounts. However, counsel requires additional time to complete this process given the high volume of requests, despite the parties' good-faith attempts to resolve the issue of restitution in advance of the sentencing hearing. Those requests, along with victim impact statements submitted on behalf of the same victims,[1] will be submitted to the Court under

---

[1] Fifty victims have submitted requests for restitution; 48 of those victims have submitted victim impact statements.

seal. This Court need not make a determination of restitution at the sentencing hearing, but must do so within 90 days of sentencing, pursuant to 18 U.S.C. § 3664(d)(5).

Special Assessments

As this Court is aware, Title 18, United States Code, Section 3014 provides that courts "shall assess an amount of $5,000 on any non-indigent person" convicted of enumerated offenses related to human trafficking and sexual exploitation, including distribution and possession of child pornography in violation of 18 U.S.C. § 2252A. *Id.* § 3014(a). Where the government believes that the defendant will be able to establish[2] that he is indigent – and thus not subject to the special assessment – and where he will surely be responsible for paying some amount in restitution, the government does not advocate for the imposition of this "JVTA" assessment.

The defendant's ability to pay is also a factor to consider in determining what assessment, if any, this Court should impose pursuant to 18 U.S.C. § 2259A. Where the defendant will be required to pay a significant amount of restitution to specifically identified victims, the government does not advocate for the imposition of this "AVAA" assessment.

## II. Application of the Section 3553(a) Factors

The government recognizes that the GSR in this case is high, especially for an offender with no prior history of criminal convictions or periods of incarceration. The government contends that a sentence contemplated by and tethered to the Guidelines, however, is one that reasonably fits the crimes to which the defendant has pled guilty. Based on an evaluation of all of the

---

[2] The defendant bears the burden of proving indigence in this context. *United States v. Kelley*, 861 F.3d 790, 800 (8th Cir. 2017). The government believes that the Court may determine whether he has met that burden without a hearing. The "detailed discussion of [the defendant's] financial situation, including his assets, income, liabilities, and expenses" outlined in the PSR "is sufficient to permit appellate review of the district court's decision to impose the $5,000 special assessment." *United States v. Lail*, 736 F. App'x. 381, 382 (4th Cir. 2018).

§ 3553(a) factors, this Court should impose a term of 84 months' incarceration, which would fall in the lower middle of the range associated with a GSR that discounts the "use of computer" enhancement.

The government recognizes that it is difficult to quantify exactly how many months or years would satisfy the Court's obligation to impose a sentence that is just, that would adequately deter both this defendant and others who might commit the same type of crime, and that would protect the most vulnerable members of our society.  A significant sentence is necessary to reflect the long-recognized gravity of the defendant's crimes.  As the Sentencing Commission found in its 2012 report to Congress,[3] "all child pornography offenses are extremely serious because they both perpetuate harm to victims and normalize and validate the sexual exploitation of children." [Id. at 311].  This is especially true here, where the defendant accessed child pornography in a forum populated entirely by others who *value*, rather than vilify, the sexual exploitation of children, and in ways that typically are successful in avoiding detection by law enforcement.  That is, the defendant was discovered by way of his IP address despite the fact that he was accessing child sexual abuse material (CSAM) on the Dark Web, which typically affords users more anonymity than some other avenues to obtaining CSAM.  What's more, the defendant admitted that he had been accessing CSAM on the Dark Web for over a decade—10 to 15 years— before he was caught, and the sheer volume of CSAM located on his computer equipment demonstrates that he was, by his own admission, a collector of child sexual abuse material.  The defendant fits squarely within the cycle of supply and demand that fuels the networks that not only cater to CSAM consumers like him but are driven by the need that they represent.

---

[3] Available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Chapter_12.pdf.

In cases subject to USSG § 2G2.2, the government often advocates a more "reasoned" approach to certain specific offense characteristics rather than a purely technical application of the Guideline. Three of those enhancements are implicated here: 2G2.2(b)(4)(A), (b)(6), and (b)(7)(D):

a. **§ 2G2.2(b)(4)(A) (sadistic/masochistic conduct or exploitation of toddler)**: The distinction between sadomasochistic violence and other types of sexual exploitation (of toddler or infant victims and older child victims) is important for the Court to weigh in truly assessing the nature and circumstances of a defendant's offense. Not all defendants charged with child pornography offenses are interested in every type of exploitation; this defendant, however, was discovered by virtue of his accessing a Dark Web site dedicated to "hurtcore"—*i.e.*, violent child pornography. The videos described in the PSR are but two examples of this type of child sexual abuse material that the defendant saved as part of his collection. As a consumer of this type of material, the defendant drives the production of such material, and should be appropriately held accountable for such. Given these case-specific considerations, the government submits that the steep enhancement (four levels) is, in fact, an accurate indicator of the nature of the defendant's crimes and thus may be appropriately relied upon by the Court to determine a reasonable sentence.

b. **§ 2G2.2(b)(6) (use of computer)**: The government concedes that in many cases, the application of this enhancement does make less sense than other frequently challenged enhancements, given that virtually all child pornography offenses today involve the use of computers. Here, the defendant's use of the Dark Web to facilitate his access to child sexual abuse material and encryption to safeguard the material he amassed over

more than a decade makes this a closer call than in the majority of child pornography cases.  **So, while the government believes that Probation appropriately included it in its GSR calculation, the government does not advocate for its application here.**  If the Court were to agree, the defendant would face a GSR of 78-97 months' incarceration (TOL 28); the government's recommendation falls slightly above the low end of that range.

   c. **§ 2G2.2(b)(7)(D) (number of images):** The government recognizes that it is relatively easy to "get to" 600 images when videos are included in a defendant's collection.  That does not render the enhancement meaningless.  Here, the defendant's collection included more than 70,000 images and 2,000 videos depicting the exploitation, rape, and abuse of children—truly staggering numbers.  Videos provide a stark reminder that the victims of this defendant's crimes are real, live children, who are raped or otherwise exploited *solely* for the pleasure of people like this defendant: individuals who are *not* traumatized by having to watch other people sexually abuse or encourage the exploitation of children around the world, but who choose to do so because they either prefer it or need it for their own sexual gratification.  Videos *should* be weighted more heavily than images.  The enhancement is not meaningless; it is essential to avoid the desensitization that has beset us legal professionals as a byproduct of prosecuting, defending, and sitting in judgment of those that violate our child pornography laws.

In this particular case, the defendant's use of the Dark Web and collection of child sexual abuse material is directly proportional to his personal impact on the 495 identified victims represented in his collection, only 50 of whom have chosen to participate in the criminal justice process, and all the others depicted in the tens of thousands of images who have not yet been

identified by law enforcement. In the face of these numbers, it is impossible to overstate the seriousness of the defendant's crimes and the corresponding need to impose a sentence greater than the minimum prescribed by law.

## CONCLUSION

The government recognizes that it is always difficult to quantify in months or years "how much" is "enough" to achieve the goals of sentencing. While the government's recommended sentence here is significant in length, it is not only reasonable, but also necessary in this case to promote respect for the law, to adequately punish the defendant for her criminal conduct, to deter her and others from offending in the same ways again, and for long-term protection of the public. For all of the foregoing reasons, the government respectfully recommends that this Court impose a sentence of 84 months in prison and a period of 5 years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

The government further joins the defendant in requesting that the determination of restitution be continued for a date within 90 days of sentencing so that the parties may continue working toward a joint resolution of the significant number of requests submitted in this matter.

Respectfully Submitted,

JOSHUA S. LEVY
Acting United States Attorney

Date: May 16, 2024        By:    /s/ Anne Paruti
                                  Anne Paruti
                                  Assistant United States Attorney
                                  United States Attorney's Office
                                  One Courthouse Way
                                  Boston, MA 02210
                                  617-748-3310

## CERTIFICATE OF SERVICE

I, Anne Paruti, hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participant as identified on the Notice of Electronic filing:

Date: May 16, 2024                                         /s/ Anne Paruti
                                                                         Anne Paruti
                                                                         Assistant United States Attorney