UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | DOCKET NO.: 1:20-cr-10012-IT |
| v. | ) | |
| | ) | |
| PAUL BATEMAN | ) | |
| | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Paul Bateman, having accepted responsibility and pleaded guilty to a two-count indictment charging possession and receipt of child pornography, submits this sentencing memorandum in support of his recommendation for a 60-month term of incarceration followed by five years' supervised release. This recommended disposition represents a fairer application of the sentencing guidelines, adequately reflects the seriousness of the offense before the Court and balances the need to punish with other properly considered sentencing factors. This proposed sentence – which involves not just a lengthy sentence of imprisonment and the first time Mr. Bateman will ever have been incarcerated – also contemplates mandatory restitution,[1] onerous registration obligations and significant monitoring by United States Probation, and is consistent with the factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing. *United States v. Kimbrough*, 552 U.S. 85 (2007); *United States v. Booker*, 543 U.S. 220 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

Finally, Mr. Bateman requests that this Honorable Court recommend to the Bureau of Prisons ("BOP") that he be designated to a facility, commensurate with this security level, in

---

[1] Undersigned counsel has been able to reach restitution settlements with some, but not all, the victims in this case, but will request – jointly with the government – that a further date for restitution hearing be set within 90 days of the date of sentencing.

Massachusetts – specifically, FMC Devens, to permit him to engage in sex offender treatment[2] and to be closer to the only family he has and the only community he has ever known.

## ARGUMENT

The Supreme Court, recognizing the immense discretion afforded to sentencing judges, advised that sentencing courts should "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). The First Circuit stressed that sentencing determinations require a "more holistic inquiry" than simply plugging numbers into a guidelines calculation, and that, at least in the federal context, the federal statutory factors to be considered are "a tapestry of factors, through which runs the thread of an overarching principle [of parsimony]." *See Rodriguez,* 527 F.3d at 228, citing *Kimbrough,* 562 U.S. at 101. That overarching principle is to "impose a sentence sufficient but not greater than necessary." *Id*. In reaching a decision on what constitutes an appropriate sentence, the court should "consider all the relevant factors" and "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *Id*.

Many courts caution against punishing consumers of child pornography more harshly in response to the societal pressure to punish their "prurient interests" and in an effort to punish them as proxies for producers and distributors:

> […] wanting to punish *someone* for the crimes that these horrible images embody, society seeks harsh sentences for anyone who participates in this market. Rarely able to catch the monsters that create the images, society reflexively nominates the consumers of this toxic material as proxies for the depraved producers and publishers. The resulting punishment under the Guidelines may be more a reflection of our visceral reaction to these images than a considered judgment of the appropriate sentence for an individual defendant.

---

[2] *See* Federal Bureau of Prisons, Custody & Care: Sex Offenders, listing FMC Devens as one of the nine BOP facilities that offer sex offender treatment: https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp

*United States v. Cruikshank*, 667 F. Supp. 2d 697, 703 (S.D.W. Va. 2009).[3] The offenses for which Mr. Bateman stands convicted involve the receipt and possession of child pornography, and despite what the government recounts as a lengthy "collecting" period, he did not distribute any of the material nor did he produce any such material. Empirical research shows, however, that internet child pornography offenders, like Mr. Bateman, "do not, as a group, present a significant risk of escalation to contact sexual offenses."[4] This is not meant by any means to downplay the trauma and prevalence of child pornography, but rather to put Mr. Bateman's conduct in the greater political, empirical, and comparative context – and to demonstrate that individualized determinations are necessary to achieve parity and fairness in sentencing for a defendant who did not engage in either production or distribution of the material he possessed.

As explained herein, a sentence of 60 months, followed by a period of supervised release of five years with special sex offender treatment and registration conditions, appropriately reflects the nature and seriousness of the offense and Mr. Bateman's personal history, and provides just punishment. Though the 60-month sentence requested herein is the "minimum" the court can impose on a defendant convicted of receipt of child pornography pursuant to 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1), it is by no measure an "insufficient" punishment for Mr. Bateman. A 60-month sentence is not just substantial punishment for a man in his 50s who has never before been arrested, charged, or imprisoned, but the lifelong and life-altering consequences attendant to his convictions make Mr. Bateman's recommended sentence sufficient but no greater than

---

[3] *See also* Rachel Aviv, "The Science of Sex Abuse," *The New Yorker*, Jan. 14, 2013, https://www.newyorker.com/magazine/2013/01/14/the-science-of-sex-abuse (rather than relying on social science and empirical evidence, lawmakers have treated child pornography offenses as if they were "inchoate" crimes, and they have "become a kind of proxy – a way to incapacitate men who we fear have already molested someone, or will in the future.").

[4] Helen Wakeling et al., "Comparing the Validity of the RM 2000 Scales and OGRS3 for Predicting Recidivism by Internet Sexual Offenders," *Sexual Abuse: J. Res. & Treatment*, Vol. 23, Iss. 1 at pg.164 (2011).

necessary. It is a sentence that is authorized by Congress and is one that is adequate and just.

**I.    The Advisory Guideline Sentence Range Should be Afforded Little Weight in Determining an Appropriate and Sufficient Sentence in this case.**

While courts must consider the sentencing guidelines, the Supreme Court has held that the Court may not presume that a guideline sentencing range is reasonable, and Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). *Kimbrough*, supra; *Gall v. United States*, 552 U.S. 38 (2007). Mr. Bateman does not dispute Probation's calculation of the guidelines: after adjusting for acceptance of responsibility, Mr. Bateman's total offense level is 30. PSR at ¶¶ 21-34. Notably, Mr. Bateman did *not* receive an enhancement – and indeed received a 2-point reduction under U.S.S.G. § 2G2.2(b)(1) – as he did not intend to traffic in or distribute the material. *See id.* at ¶ 22. With a criminal history category I, the resulting advisory sentencing range is 97-121 months imprisonment. *Id.* at pg. 17. But, as even the government recognizes in this case, a more practical application of the guidelines would produce a lower total offense level and a lower corresponding advisory sentencing range.

*Support for a "Reconstructed Guideline" Analysis for U.S.S.G. § 2G2.2*

The child pornography guidelines have been called "a one-way ratchet, repeatedly turned by Congress,"[5] with the increasingly punitive amendments driven by politics rather than empirical or evidence-based research. *United States v. Dorvee*, 616 F.3d 174, 184-85 (2nd Cir. 2010). The Sentencing Commission "openly opposed these Congressionally directed changes" several times over the years, stressing that the amendments outlined above prevent the Commission from "provid[ing] proportionality among different grades of seriousness" and

---

[5] *See also* Carol S. Steiker, "Lessons from Two Failures: Sentencing for Cocaine and Child Pornography under the Federal Sentencing Guidelines in the United States," 76 *Law & Contemp. Probs.* Vol, 76, No. 1, at 37 (2013).

would "reintroduce sentencing disparity among similar defendants." *Id.* at 185 (internal quotations omitted). Although political and moral judgments guide sentencing considerations in all criminal cases, as Chief Judge Saylor in this district emphasized, "the sentencing of child pornography offenders has been politicized to a degree not present in other cases," and is not predicated on "careful empirical analysis." Excerpt Transcript of Sentencing at 5, *United States v. Bhavsar*, Docket No. 10-CR-40018-FDS, ECF No. 56 at pg. 5.

The sentencing guidelines for offenses under USSG § 2G2.2 are more often <u>not</u> followed because of the unjustifiably high sentences they call for.[6] Perhaps no other guideline has been so roundly rejected and criticized by the courts. In *Dorvee*, the Second Circuit described USSG § 2G2.2 as "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." 616 F.3d at 188. The Second Circuit also characterized a mechanical application of the child pornography guidelines as "fundamentally incompatible with § 3553(a)," *Id.* at 187, and noted that most of the §2G2.2 enhancements "are all but inherent to the crime of conviction" and "routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases." *Id.* at 186.[7] A December 2012 Sentencing

---

[6] *See* U.S. Sent'g Comm'n, *Mandatory Minimum Penalties for Sex Offenses in the Federal Criminal Justice System*, January 2019, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190102_Sex-Offense-Mand-Min.pdf, at 49-52 (noting that in Fiscal Year 2016 only 26.8% of child pornography offenders were sentenced within the guideline range, compared to 46.6 percent of offenders overall).

[7] *See United States v. Grober*, 595 F.Supp.2d 382, 397 (D.N.J. 2008) (characteristics identified by the Sentencing Commission as enhancements are "irrational because logically and factually, the characteristics are simply not genuine aggravating factors. Rather, they are inherent in just about any downloading offense."). *See also* U.S. Sent'g Comm'n, *Use of Guidelines and Specific Offense Characteristics, Guideline Calculation Based, Fiscal Year 2017*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2017/Use_of_SOC_Guideline_Based.pdf, at 45-46 (showing that in Fiscal Year 2017, enhancements were applied with the following frequency in cases sentenced under §2G2.2: prepubescent minor - 94.1%; sadistic or masochistic content – 71.2%; distribution (of any kind) – 51.1%; use of computer – 95.7%; number of images – 95.3% (74.7% for 600 images or more).

Commission report to Congress on federal child pornography offenses similarly noted that in non-production cases, many of the sentencing enhancements applied in the vast majority of § 2G2.2 cases.[8]

Many judges in this district have not endorsed a mechanical application of § 2G2.2 for the exact reasons advanced by the Sentencing Commission. One judge asserted that the guideline for this offense is "flawed," and "doesn't command the same respect that other aspects of the Guidelines may." *United States v. Hooper*, 12-CR-10156 (GAO) (Judgment, Dec. 4, 2012); *United States v. Keith*, 11-CR-10294-GAO (ECF No. 106, Transcript of Sentencing, Sept. 29, 2014). In those cases, Judge O'Toole "reconstructed" the guideline "by adjusting for the exclusion of those adjustments" that occur in over 90 percent of cases as set forth in the Sentencing Commission's 2012 report, and "omitted the adjustments" for prepubescent-minor, use of a computer, and number of images, thereby reducing the defendant's offense level by nine. *See Keith*, supra, at pg. 53.[9]

The same flaws in the guidelines present themselves here and lend support to a downward variance. In its sentencing memorandum, the government advocates for the "discount[ing of] the

---

[8] *See* U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012), Table 8-1: FY10 Application Rates of Enhancements in § 2G2.2, pg. 209, https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf.

[9] In *United States v. Bhavsar*, Judge Saylor noted "the enhancement for use of a computer is overkill at best in an age in which all photography and all circulation of pornography is done by computer; and likewise, the enhancement for images involving prepubescent minors is duplicative when no other kinds of cases are prosecuted[.]" 10-CR-40018-FDS, ECF No. 56, Excerpt Transcript of Sentencing at 6. *See also United States v. Kearney*, 08-CR-40022-FDS, ECF No. 151, Transcript of Sentencing at 33 (noting that the specific offense characteristics under §2G2.2 are "based on purported individualized factors, but the factors aren't individualized," and that the enhancements for images depicting prepubescent minors, number of images, and use of a computer are" duplicative and unnecessary."), and *United States v. O'Hern*, 14-cr-10241-DJC (ECF No. 45-2, Transcript of Sentencing, July 21, 2015, pg. 4) (imposing a more than 50-percent downward variance to 63 months where the guideline range was 151-188 months and the conduct involved both distribution and possession of child pornography, in recognition of the inappropriateness of some of these universally applied enhancements and recognized the widespread criticisms of the child pornography guidelines.).

'use of computer' enhancement," which would produce a total offense level 28 and a GSR of 78-97 months. *See* D.E. 157, Gov. Sent. Memo at 4, 5-6. Mr. Bateman asks this court to deconstruct the guideline further. Specifically, and in addition to omitting the "use of computer" 2-point enhancement at § 2G2.2(b)(6), it would be appropriate – as essentially inherent to the crime of conviction – to similarly omit the 2-point enhancement for "prepubescent minor" at § 2G2.2(b)(2). Using this "reconstructed" guideline and omitting the adjustments for prepubescent-minor and use of a computer (which are inherent to the crime of conviction), Mr. Bateman's total offense level would be reduced by four levels to an adjusted GSR of 26 after acceptance, resulting in an advisory guideline sentencing range of 63-78 months.

## II.   A 60-Month Sentence is Just and No More Than Necessary to Achieve the Goals of Sentencing.

Mr. Bateman accepts completely that his conduct was criminal and harmful to the victims in this case, and he does not dispute that he deserves punishment. Indeed, for over the last four years, he has truly come to terms with the gravity of his offenses and has already begun to suffer the consequences. In accepting responsibility and in requesting a sentence of imprisonment of 60 months, Mr. Bateman asks this Court to impose not just the lengthiest term of incarceration in his life, but the first and only term of imprisonment he has ever served. Where, as explained above, the advisory sentencing guidelines recommend a range that is neither just nor wholly commensurate to the conduct, this Honorable Court is instead guided by the principle of 18 U.S.C. § 3553(a) to impose a sentence that is sufficient, but not greater than necessary.

### *Mr. Bateman's History and Characteristics*

Mr. Bateman's "history and characteristics" are a required consideration under 18 U.S.C. § 3553(a)(1) in determining what sentence is "sufficient but not greater than necessary." As he stands ready to be sentenced for his offenses, Mr. Bateman presents as both a man who has lost

so much, and a man who is capable of rehabilitation and worthy of support. Understandably, his arrest for these offenses shattered many relationships and resulted in not just the loss of his job, but a 20+-year career. *See* PSR ¶ 54. His wife and partner of 25 years was, of course, devastated by his conduct and they briefly separated after his arrest. But, as testament to and demonstrative of Mr. Bateman's sincere remorse, his efforts to rebuild his relationships, and to achieve a law-abiding, productive life, Mr. Bateman worked hard to obtain new employment and to meaningfully reconcile with his wife. *Id.* at ¶¶ 47, 53.

Shortly after his arrest in December 2019, Mr. Bateman was released on a secured bond and numerous conditions of release, which included significant computer and internet restrictions and home detention. *See* D.E. # 7, 9. Over the course of four years, his conditions of release were amended with the assent of the government and U.S. Pretrial Services to permit him to, *inter alia*, return to his marital home and to "step down" his home detention to a set curfew. And over the last 4+ years, Mr. Bateman has remained compliant with his conditions of release and dutifully reports to his Pretrial Officer. Indeed, the government did not seek his detention after his plea in this case, and he remained on conditions pending sentencing for over six months without violation or issue. His record of compliance with the most onerous of conditions clearly evinces his amenability for rehabilitation.

In February 2020, Mr. Bateman secured employment with a local store and he was able to progress from cashier to stock associate, and eventually to cooler supervisor. *See* Exhibit 3, Letter from Employer. Though both this work and his compensation vastly differ from his prior career, Mr. Bateman diligently sought to prove himself a hardworking and valued employee. *Id.*

He has also engaged in extremely difficult discussions with family about his offenses and about his intentions and commitment to never again reoffend or bring further shame to them. *See*

8

PSR at ¶ 47; Exhibit 1, Letter from John Bateman. And though those closest to him were horrified by his conduct, their continued support reflects his acceptance of responsibility and the remorse that he has expressed to them. *Id.*

For someone who made a life in the area where he grew up, Mr. Bateman will undoubtedly feel the loss of community and familial support more acutely when imprisoned and he recognizes that in accepting responsibility and recommending a 60-month sentence, he is likely to further be isolated from family and his community. His mother writes of the toll that this case has taken on both Mr. Bateman and his family and worries that a lengthy prison sentence will result in her not seeing her family again. *See* Exhibit 2, Letter of Mary Bateman.

### *Reduced Risk of Recidivism and Deterrence*

While many laws pertaining to child pornography offenders are driven by a fear of recidivism, sentencing commission statistics show that recidivism rates for child pornography offenders is among the lowest across all types of criminal offenders.[10] Like Mr. Bateman, "first-time child pornography possession offenders appear to be very low risk of sexual recidivism, in contrast to those with any prior or concurrent criminal convictions or those who engage in other sexual offending [e.g., attempted or actual contacts with a child, production of child pornography],"[11] and "online offenders who had no history of contact offenses almost never committed contact sexual offenses."[12]

---

[10] U.S. Sent'g Comm'n, *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders*, (March 2017) at A-15 and A-16, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf (showing that child pornography offenders had **the lowest** rate of reconviction and reincarceration).

[11] "Child Pornography Offender Characteristics and Risk to Reoffend," Testimony of Michael C. Seto, Ph.D., C. Psych. before the USSC, Feb. 6, 2012, at pg. 4, https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20120215-16/Testimony_15_Seto.pdf

[12] Michael C. Seto et al., "Contact Sexual Offending by Men With Online Sexual Offenses," *Sexual Abuse* Vol. 23, Iss. 1, at pg. 137 (2011); *see also* Richard Wollert, Written Testimony Presented to the

Now 51 years old, Mr. Bateman faces the prospect of release from federal prison in his early to mid-50s, and he will enter a vastly different world from the one he leaves when he will be sentenced. But notably, he is already in an age cohort that has reduced levels of sexual recidivism, and that risk of recidivism will only continue to decrease with time. According to the United States Sentencing Commission, recidivism rates (re-arrest, re-conviction, and supervised release violation rates) among all offenders generally "decline relatively consistently as age increases," from 35.5% for offenders under age 21, down to 12.7% for offenders age 41 to 50, and down to 9.5% for offenders over age 50.[13] For offenders in both Mr. Bateman's age group at release and criminal history category (I), the recidivism rate drops even lower, to 6.9%.[14] For sex offenders, specifically, recidivism declines with age, with age being one of the most robust predictive factors for decreased risk of sexual recidivism.[15] Moreover, both his employment status and his marital status contribute to reduced rates of recidivism.[16]

With respect to deterrence, both the public exposure of his case and his lengthy period of pretrial release have already had an enormous deterrent effect on him. Through his perfect record of compliance with home detention and pretrial release conditions over four years, he has already demonstrated that his arrest and prosecution have deterred him from reoffending in any way.

---

U.S. Sent'g Comm'n, "The Implications of Recidivism Research and Clinical Experience for Assessing and Treating Federal Child Pornography Offenders," Feb. 15, 2012, at pgs. 14-17, 21-22 (reporting that in his study of 72 federal child pornography offenders under supervision, including three production offenders, with varying criminal histories, two were arrested for possessing child pornography and none were arrested for a contact offense within four years), https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20120215-16/Testimony_15_Wollert_2.pdf

[13] U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 (2004), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf

[14] *Id.*, at pg. 28, Exhibit 9.

[15] *See* R.K. Hanson, *Recidivism and Age: Follow-up Data from 4,673 Sexual Offenders*, 17 J. Interpers. Violence 1046, 1054 (2002).

[16] *See* Note 10, supra, at 12.

And a 60-month sentence for the conduct of conviction in this case – especially where this will be Mr. Bateman's first and only time spent in prison – sends a strong message to other would-be child pornography offenders about the severe consequences for this conduct.

### *Avoiding Unwarranted Sentencing Disparities*

The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct is codified in 18 U.S.C. § 3553(a)(6). The U.S. Sentencing Commission provides limited data of dispositions for defendants whose primary guideline was U.S.S.G. § 2G2.2: specifically, in the last five fiscal years (2019-2023), 774 offenders with Mr. Bateman's same criminal history category (I) and offense level (30) were sentenced in federal court.[17] The average sentence imposed was 71 months, and the median was 72 months, both of which are below the applicable advisory guideline sentencing range and the government's sentencing recommendation in this case. But there are notable limitations to the consideration of the JSIN data, especially where it offers no breakdown of the enhancements applied under § 2G2.2 and would include, for example, those whose offenses involved possession of child pornography but received an enhancement for distribution.[18]

In 2021, the Sentencing Commission published a detailed report to Congress on non-production child pornography offenders.[19] The Commission studied and reported on the facts, circumstances, and sentences of all of the 1,340 offenders sentenced under Guideline § 2G2.2

---

[17] *See* U.S. Sent'g Comm'n, Judiciary Sentencing Information data for Primary Guideline § 2G2.2 at cell I, 30, https://jsin.ussc.gov/analytics/saw.dll?Dashboard. *See also* PSR at ¶ 75.

[18] Possession of child pornography under § 2G2.2 has a base offense level of 18. Adding all the enhancements technically applied to Mr. Bateman (a total of 13 points) *and* a 2-point distribution enhancement would produce a TOL 30, with acceptance, and the same GSR of 97-121 months.

[19] U.S. Sent'g Comm'n, *Federal Sentencing of Child Pornography: Non-Production Offenses* (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf at page 7 (13 of 94).

during FY 2019.[20] Mr. Bateman – with a technical application of the guidelines, at TOL 30 and GSR of 97-121 months – falls directly in line with the most common receipt cases analyzed in this study.[21] Notably, 69.2% of receipt defendants in this study received a downward variance, with some sentenced as low as 37 months.[22]

The data also shows that the "decision to charge possession instead of receipt may not always reflect the seriousness of offender conduct with respect to distribution," where "offenders sentenced for possession actually distributed child pornography (56.8%) at a rate almost three times higher than those sentenced for receipt (21.2%)."[23] Even more telling, for the "possessors-in-name-only" cases in this study (defendants charged with possession who received a distribution enhancement) who had Mr. Bateman's TOL and GSR, the average sentence was 57 months, a sentence far below both the advisory range and the government's sentencing recommendation, *and* below the average and median sentences according to JSIN.[24]

### *Protection of the Public*

Should the Court impose the requested sentence of 60 months and five years of supervised release, the overall sentence – accounting too for over four years of pretrial supervision on release conditions – will span over 14 years of Mr. Bateman's life under court and/or prison supervision. Though the 60-month sentence contemplates incapacitation during that period, the limitations on his conduct and life both pretrial and as anticipated on supervised release are severe and contribute towards the sentencing goal of protecting the public. Moreover,

---

[20] *Id.* at 9 (15 of 94).
[21] *Id.* at 55 (61 of 94).
[22] *Id.*
[23] *Id.* at 51 (57 of 94).
[24] *Id.* This is perhaps even more notable where the median number of images from this 2019 study of non-production child pornography offenses was 4,265 images, with some offenders possessing and distributing *millions* of images and videos. *Id.* at 4 (10 of 94).

when Mr. Bateman is released from prison, he will be subject to both the sex offender registry laws and stringent monitoring by probation, which will continue to protect the public and mitigate his risk of recidivism.

### *Need for Treatment*

With a 60-month sentence, Mr. Bateman will be able to participate in treatment programs in the Bureau of Prisons, including sex offender treatment, and his request for a recommendation to FMC Devens demonstrates his willingness to engage in that treatment. His continued sex offender treatment and registration will be mandated for the five years that he will be monitored in the community by U.S. Probation, and his anticipated treatment participation will reduce his risk of recidivism.[25] A lengthier term of incarceration is not necessary to afford him the treatment that he will receive during a 60-month sentence and while on supervised release.

### *Need to Pay Restitution*

The restitution obligations that Mr. Bateman faces is an important sentencing goal the Court must consider under 18 U.S.C. § 3553(a)(7), and one that counsel submits is of paramount importance here. *See United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) (acknowledging district court's discretion to depart from guidelines to impose probationary sentence, since the "goal of obtaining restitution for the victims of Defendant's offense … is better served by a non-incarcerated and employed defendant."). Mr. Bateman intends to make restitution to the victims, and to cooperate in the government's efforts to collect that restitution. If incarcerated for a lengthier period of time, Mr. Bateman will not be able to contribute to

---

[25] *See* U.S. Dep't of Justice, Center for Sex Offender Management, *Understanding Treatment for Adults and Juveniles Who Have Committed Sex Offenses* 10 (2006); *See* U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012) ["*Child Porn Report*"] at 278 & n. 31(quoting Center of Sex Offender Management, The Comprehensive Approach to Sex Offender Management 5 (2008)) (finding that appropriate treatment interventions are associated with very significant lower rates of recidivism).

restitution, and the longer Mr. Bateman is in prison, the longer he will be unable to contribute in any meaningful way to restitution, and the fewer productive years he will have remaining when he gets out. Thus, the sentence proposed by the defense fulfills the need to provide restitution to the victims of the offense.

Specifically, 29 requests for restitution have been submitted by the government.[26] In consultation with victims' counsel, and as of the date of this filing, Mr. Bateman has reached restitution settlement agreements for 10 victims, and has thus far agreed to pay a total of $33,500 in restitution to these victims. Undersigned counsel continues to review the remaining restitution requests and is in communication with victims' counsel on a number of requests, and anticipates resolution on most, if not all, of the remaining requests. Due to rolling nature of the submissions, however, and counsel's need to thoroughly review the materials and consult with Mr. Bateman, the parties will jointly request that the Court, pursuant to 18 U.S.C. § 3664(d)(5), schedule a date within 90 days of sentencing to determine restitution. Counsel notes, however, that it is expected that the total restitution figure will be much higher given the remaining requests yet to be finalized and/or submitted, but counsel provides the court with the information she has available at the time of this filing.

### III.   Lifelong and Life-Altering Collateral Consequences Militate in Favor of a 60-Month Sentence.

For Mr. Bateman, this conviction will follow him the rest of his life – well beyond the terms of his imprisonment and supervised release. It will be significantly harder for him to find a job and to reintegrate into society upon his release. He likely will be subject to harassment, and

---

[26] Undersigned counsel received restitution requests and materials from the government on a rolling basis, on April 1, May 3, May 10, and May 14, 2024, and the government has indicated that additional requests may be expected. Counsel notes that the government, in its sentencing memorandum, indicated that restitution requests on behalf of 50 victims have been submitted, but after further inquiry, confirmed that there have been 29 restitution requests made in this case.

at greater risk of violence, both in prison and afterwards in the community. As several courts have recognized, collateral consequences of conviction, such as registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just punishment. *See, e.g., United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (district court's consideration of the lasting effects of being required to register as a sex offender is appropriate mitigating factor in sentencing); *United States v. Autery*, 555 F.3d 864, 875 (9th Cir. 2009) (characterizing sex offender registration as "a punishment of lifelong significance (which can cause the listed person to become so socially ostracized that he has difficulty living in many communities)"). These collateral consequences of conviction – though civil and not intentionally punitive in nature – should be considered in the calculus of a sentence's reasonableness and parsimony. This is especially true where the "collateral consequences of child pornography convictions are extreme, perhaps more extreme in some ways than any other form of criminal activity… It is a crime of extreme shame and humiliation." *United States v. Bhavsar*, 10-CR-40018-FDS, ECF No. 56, Excerpt Transcript of Sentencing at 8.

**IV.    A Fine and/or Special Assessment is Not Warranted Here.**

Though the government is not seeking either a fine or special assessment in this case, Mr. Bateman submits that neither a fine nor a special assessment, pursuant respectively to 18 U.S.C. § 3014(a)(3) and 18 U.S.C. § 2259A, would be appropriate in this case where his restitution obligations are expected to be large and his ability to pay restitution would be impaired by the imposition of a fine or special assessment.

Though he has been on conditions of release for over four years, his income dramatically dropped after losing his prior employment, and he now earns $20/hour (having started at $16/hour in 2020). PSR ¶ 53. After a sentence of incarceration – even as requested herein – Mr.

Bateman will be in his mid-50s and will have a significant gap in employment, and as such his earning and working capacity will be substantially reduced. This is to say nothing, of course, of his ability to seek and maintain employment after serving a federal prison sentence and being under supervision after conviction of a sex offense.

Mr. Bateman further submits that his potential future earnings are likely to be nominal and are in any event to be offset by his extensive restitution obligations. He fully intends to prioritize payment of his restitution obligations that we expect to be imposed in this case and submits that the imposition of a fine would impair his ability to fulfill his restitution obligations. *See* 18 U.S.C. § 3572(b) ("If, as a result of a conviction, the defendant has the obligation to make restitution to a victim of the offense […] the court shall impose a fine or other monetary penalty only to the extent that such fine or penalty will not impair the ability of the defendant to make restitution."). For these reasons, Mr. Bateman asks this Honorable Court not to impose a fine or special assessment.

## V.      Objections to Certain Special Supervised Release Conditions.

Under 18 U.S.C. § 3583(d), the court may order special conditions of supervised release, only to the extent that such conditions:

> (1) are reasonably related to (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) are designed to afford adequate deterrence to criminal conduct, (c) protect the public from future crimes of the defendant, and (d) provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;

> (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes of affording adequate deterrence to criminal conduct, protecting the public from further crimes of the defendant, and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

> (3) are consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a). *See also* U.S.S.C. § 5D1.3(b).

16

Mr. Bateman submits that certain conditions recommended by the Probation Department involve greater deprivations of liberty than are reasonably necessary to achieve the goals of sentencing and are insufficiently tailored to his conduct and his case. He submits that his proposed revision(s) to these supervised release conditions set forth herein are consistent with 18 U.S.C. §3583(d). In a recent case, with more egregious conduct of conviction and more serious offenses, this Honorable Court adopted and incorporated the same proposed revisions to the conditions of release proffered by Mr. Bateman below. *See United States v. Baez-Nova*, No. 1:21-cr-10163-IT, D.E. # 136, Judgment (D. Mass. Mar. 4, 2024).

The First Circuit recommends against taking a "broad-brush, untailored approach to sculpting the conditions of supervised release." *United States v. Hinkel*, 837 F.3d 111, 125 (1st Cir. 2016) (vacating, *inter alia*, conditions of supervised release that barred the defendant from accessing the internet without preapproval from Probation and barred the defendant from accessing 'sex-related' sites). Where "the ultimate purpose of supervised release is its eventual end and the offender's return to society," the First Circuit endorsed "the value of a release program as a rehabilitative tool mirrors the extent to which the conditions of supervised release simulate life after the program's end." *See United States v. Perazza-Mercado*, 553 F.3d 65, 71 (1st Cir. 2009), quoting Frank E. Correll, Jr., "You Fall into Scylla in Seeking to Avoid Charybdis": The Second Circuit's Pragmatic Approach to Supervised Release for Sex Offenders, 49 Wm. & Mary L.Rev. 681, 703–04 (2007). Mr. Bateman does not advocate for the wholesale removal of any condition that would deprive him of the same liberty which he would be afforded upon the termination of supervision, but asks instead to modify certain conditions to permit lawful conduct and better tailor them to both his history and the need to limit deprivations of liberty to achieve the goals of sentencing.

Mr. Bateman addresses each of the disputed conditions in turn:

- ***Special Condition 6: Polygraph Condition***: You must submit to periodic polygraph testing as a means to ensure that you are in compliance with the requirements of your supervision or treatment program. When submitting to a polygraph exam, you do not waive your Fifth Amendment rights, and your exercise of such rights will not give rise to a violation proceeding. The results of the polygraph examinations may not be used as evidence in Court to prove that a violation of community supervision has occurred, but may be considered in a hearing to modify release conditions and/or could initiate a separate investigation.

Mr. Bateman objects to the condition that he submit to periodic polygraph testing. Polygraph testing is already listed as a possible part of sex offender treatment and evaluation in special condition number 5, a condition to which he does not object. He will also be subject to a condition that he answer truthfully all inquiries by probation. Given those conditions, and his complete compliance with all conditions of release for over three years, this additional condition is unnecessary and should only be imposed if it is part of a sexual-specific evaluation and/or sex offender specific treatment. Consistent with *Baez-Nova*, Mr. Bateman requests that this Honorable Court substitute the following language for the *first sentence* of this condition: "You must submit to polygraph testing if sought as part of a sexual-specific evaluation or sex offender specific treatment."[27]

- ***Special Condition 7: Parameters of Monitoring Software***: You must allow the installation of computer internet monitoring software on approved internet capable devices, but may still use a computer for work purposes that has been previously approved by the Probation Office. The program(s) used will be designed to identify, for the Probation Office, the viewing, downloading, uploading, transmitting, or otherwise using any images or content of a sexual or otherwise inappropriate nature. You must not attempt to remove or otherwise defeat such systems, and must allow the Probation office to examine such computer and receive data from it at any reasonable time.

While Mr. Bateman does not object to the use of monitoring software, he does object to

---

[27] *See Baez Nova, supra*, at pg. 6, Special Condition of Supervision # 11.

the vague and overly broad use of the software to identify "any images or content of a sexual or otherwise inappropriate nature." This vague, undefined term provides Mr. Bateman essentially no notice of what he can or cannot view online. He proposes that the monitoring software be set up only to identify sexually explicit material, as defined in 18 U.S.C. § 2256(2)(A) and as set forth in Special Condition 9. The condition as proposed permits the Probation Department to review *all* content on a defendant's phone, including, for example, communications between counsel and client. It thus often captures material far afield from potentially contraband images. Consistent with *Baez-Nova*, Mr. Bateman requests that this Honorable Court substitute the following language for the *second sentence* of this condition: "The program(s) used will be designed to identify, for the Probation Office, the viewing, downloading, uploading, transmitting, or otherwise using any images or content of sexually explicit materials as defined in 18 § 2256(2)(A)."[28]

- **_Special Condition 10: Disclosure of Usernames and Passwords_**: You must disclose all account information relative to internet access, social networking, and email, including user names and passwords, to the Probation Office[.]

Mr. Bateman objects to a condition that requires that he disclose usernames and passwords of all accounts relative to internet access, social networking, and email to his probation officer. Such a condition is an extreme invasion of privacy that is not warranted given all the other ways probation will be monitoring his internet usage. Mr. Bateman submits that a condition requiring disclosure of usernames and passwords would be appropriate only if there is reasonable suspicion that such accounts are being used in connection with sexually explicit materials as defined in 18 U.S.C. § 2256(2)(A). Again, consistent with *Baez-Nova*, Mr. Bateman requests that this Honorable Court substitute the following language for the *first sentence* of this

---

[28] *See id.*, at pg. 6, Special Condition of Supervision # 12.

19

condition instead: "You must disclose all account information relative to internet access, social networking, and email, including user names and passwords, to the Probation Office which may access such accounts only upon reasonable suspicion that such accounts are being used in connection with sexually explicit materials as defined in 18 § 2256(2)(A)."[29]

## **CONCLUSION**

For the foregoing reasons, the Court should impose 60 months followed by five years of supervised release.

DATED: 5/16/24

Respectfully submitted,
PAUL BATEMAN
By His Attorney,

*/s/ Sandra Gant*
Sandra Gant
BBO #: 680122
Federal Defender Office
51 Sleeper Street, Fifth Floor
Boston, MA 02210
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 16, 2024.

*/s/ Sandra Gant*
Sandra Gant

---

[29] *See id.*, at pg. 6, Special Condition of Supervision # 15(a).